UNITED STATES of America,
Plaintiff-Appellee,

v.

Dennis SEYBOLD, Defendant-Appellant.

No. 83–1073.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1983.

Decided Feb. 3, 1984.

Rehearing Denied March 2, 1983.

Brian C. Leighton, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

David Roberts, Fresno, Cal., for defendant-appellant.

Before WALLACE and BOOCHEVER, Circuit Judges, and WYZANSKI,* District Judge.

WALLACE, Circuit Judge:

Seybold was convicted on stipulated facts of possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871. On appeal, he challenges the district court's denial of his motion to suppress evidence as illegally obtained. Seybold contends that the affidavit supporting the warrant pursuant to which his residence was searched was insufficient to establish probable cause for the search. We affirm.

I

On June 16, 1982, Seybold was indicted, along with thirty-two other defendants, by a grand jury. The indictment charged Seybold with conspiring to manufacture phenyl-2-propanone and conspiring to manufacture and distribute methamphetamine. He was also charged with several of the sub-

---

* Honorable Charles Edward Wyzanski, Jr., United States District Judge, District of Massachusetts, sitting by designation.

stantive offenses in the seventy-three-count indictment. On June 18, a special agent of the Drug Enforcement Administration (DEA) applied to a federal magistrate for a warrant authorizing the search of Seybold's residence. In support of his application, the DEA agent submitted a seven-page affidavit which incorporated a copy of the indictment. The magistrate issued the search warrant on June 21, 1982.

The search warrant was executed the following day. Seybold was present at the time of the search. As a result of their search, law enforcement agents seized seven firearms, several items of drug paraphernalia, and miscellaneous documents and papers they believed were related to drug transactions. Seybold was subsequently charged, in a three-count indictment, with illegal possession of the firearms that had been seized during the search. Seybold moved to suppress all the evidence seized during the search of his residence. The district court denied this motion.

Seybold waived his right to jury trial and agreed to submit the issue of his guilt under count three of the indictment to the court on a written stipulation of facts. The district judge convicted Seybold of possessing an unregistered sawed-off shotgun, and sentenced him to five years imprisonment. Counts one and two of the indictment, involving the illegal receipt and possession of firearms by a convicted felon, were dismissed on the government's motion.

## II

There is some apparent confusion among our prior cases concerning the appropriate standard for reviewing a magistrate's probable cause determination. *See United States v. O'Connor*, 658 F.2d 688, 690 n. 5 (9th Cir.1981); *United States v. Flickinger*, 573 F.2d 1349, 1356 n. 2 (9th Cir.1978). The Supreme Court's most recent pronouncement on this subject makes it unnecessary, however, for us to resolve this confusion.

In *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (*Gates*), the Supreme Court clearly indicated that it was inappropriate for appellate courts to subject supporting affidavits to de novo review. The Court reiterated the fourth amendment's strong preference for warrants and warned that "[a] grudging or negative attitude by reviewing courts" might encourage police to resort to warrantless searches. *Id., quoting United States v. Ventresca*, 380 U.S. 102, 108 [85 S.Ct. 741, 745, 13 L.Ed.2d 684] (1965). Accordingly, the Court stated that "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* 103 S.Ct. at 2332, *quoting Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). The Court found that this "substantial basis" standard of review embodied the great deference that should be shown by reviewing courts to magistrates' probable cause determinations. *Id.* 103 S.Ct. at 2331.

## III

Keeping in mind this limited scope of our review, we turn to the facts contained in the affidavit and the indictment. The search warrant described personal address and telephone books as well as any documents relating to the manufacture and distribution of methamphetamine. The apparent aim of the search was to discover evidence connecting Seybold to the co-conspirators charged in the June 16, 1982 indictment.

In addition to establishing the proper standard for reviewing magistrates' determinations of probable cause, *Gates* provides guidance about what constitutes probable cause for the issuance of a search warrant. The Supreme Court rejected the technical notion that probable cause can be

"reduced to a neat set of legal rules." 103 S.Ct. at 2328. Instead, it concluded that probable cause is a fluid concept turning on the "assessment of probabilities in particular factual contexts." *Id.* The Court therefore adopted a "totality of the circumstances" approach to probable cause: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 2332.

The affidavit presented the magistrate in the case before us with several factual allegations allowing him to determine that a fair probability existed of finding evidence in Seybold's residence. The affidavit states that telephone numbers "linked" to Seybold were found in the personal address books of two persons who were also indicted with him and had been previously arrested. Seybold contends that this allegation is too conclusory to be meaningful. Looking at the whole affidavit, however, it appears that the described "links" to Seybold did suggest a probability that Seybold would also possess documents connecting him to others indicted under the conspiracy charge. The affidavit describes six instances in which address books or similar personal papers seized from others associated with the alleged conspiracy contained the names and telephone numbers of numerous other alleged co-conspirators. The affidavit also indicates that a DEA intelligence analyst compared the seized personal books and papers with telephone records, police reports, and arrest records to develop the "links" described in the affidavit. Standing alone, these alleged connections to Seybold might not have justified a search of Seybold's residence to discover evidence of his corresponding ties to those and other indicted conspirators. Nevertheless, these connections provided useful information that the magistrate could permissibly have considered, along with the other matters in the affidavit, in deciding to issue a search warrant for Seybold's personal address and telephone books.

Other important information in the affidavit included the opinion of an experienced narcotics agent. This DEA agent stated in his affidavit that, based on his 14 years' experience in drug enforcement and his participation in hundreds of searches, narcotics dealers invariably have personal address or telephone books containing the names and telephone numbers of others associated with them in the narcotics business. We have repeatedly found the opinions of experienced law enforcement agents highly important in making probable cause determinations. *E.g., United States v. Foster,* 711 F.2d 871, 878 (9th Cir.1983); *United States v. Johnson,* 660 F.2d 749, 753 (9th Cir.1981), *cert. denied sub nom. Winter, aka Goodhead v. United States,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982); *United States v. Valenzuela,* 596 F.2d 824, 827–28 (9th Cir.), *cert. denied sub nom. Lizarraga v. United States,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979).

We find further support for the magistrate's probable cause determination in the affidavit's recitation of the testimony of an unnamed witness before the grand jury. According to the affidavit, the grand jury witness testified under oath that he or she was familiar with Seybold and knew that Seybold had a personal telephone and address book. Like the allegations described above, this piece of information standing alone appears relatively insignificant. In connection with the other facts and circumstances before the magistrate, however, the witness's sworn testimony increased the probability that evidence linking Seybold to the other conspirators would be found in Seybold's residence.

■ Finally, the magistrate had before him the information contained in the indictment. A magistrate may consider the information contained in an indictment in making a probable cause determination. *United States v. Ellsworth,* 647 F.2d 957, 963 (9th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2008, 72 L.Ed.2d 465 (1982). The affidavit incorporated by reference the June 16, 1982 indictment which includes

fairly detailed factual allegations about Seybold's actions in furtherance of the conspiracy. This information concerning Seybold's alleged criminal activities with other indicted co-conspirators could only have increased the probability that a search of Seybold's residence for his personal address and telephone books would uncover evidence of a crime.

Seybold vigorously contends that our decisions in *Ellsworth* and *United States v. Rubio,* Nos. 80–1577, et al., slip op. at 1602 (9th Cir. April 14, 1983), *withdrawn,* 703 F.2d 1124 (9th Cir.1983), *new opinion,* 727 F.2d 786 (9th Cir.1983),[1] preclude the magistrate from relying on the fact of his indictment in determining whether probable cause existed for searching his residence. Seybold misapprehends the law on this point. In *Ellsworth,* we merely stated that an indictment *alone* does not constitute probable cause to issue a search warrant. 647 F.2d at 964. As we explained in both *Rubio,* 727 F.2d at 794–95, and *Chesher,* 678 F.2d at 1363, n. 9, this principle follows from the different functions of grand juries and magistrates. A grand jury's determination that sufficient evidence of guilt exists to indict an individual may not necessarily mean that evidence of that person's guilt will likely be found in his residence. *See Rubio,* 727 F.2d at 794–95; *Chesher,* 678 F.2d at 1363 n. 9. Nevertheless, a magistrate may apply his independent judgment to the factual allegations in an indictment to determine whether probable cause for a search warrant exists. *See Ellsworth,* 647 F.2d at 963.

That is precisely what was done in this case. The magistrate was provided with the indictment itself, not merely informed that Seybold had been indicted. *Cf. Chesher,* 678 F.2d at 1363 (recitation in affidavit that RICO defendant had been indicted held insufficient to support search warrant

for defendant's residence). The magistrate could therefore consider the information in the indictment together with the allegations contained in the affidavit in making his probable cause determination.

### IV

Application of the principles announced in *Gates* compels us to hold that the warrant to search Seybold's residence was supported by probable cause. Given the totality of the facts and circumstances set forth in the affidavit and indictment, the magistrate had a substantial basis for concluding there was a fair probability that evidence of a crime would be found in Seybold's residence. The fourth amendment requires no more.

AFFIRMED.

---

1. The version of *Rubio* relied on by Seybold was withdrawn for reconsideration in light of the Supreme Court's decision in *Gates.* The new opinion, which was substituted for the withdrawn version of *Rubio,* is consistent with our analysis in this case. The new *Rubio* opinion clearly recognizes, as we do, that "*Ellsworth* allows the indictment to be considered along with other facts by a magistrate in determining probable cause, [but] it is not, of itself, an adequate substitute for articulable facts in the warrant affidavit." At 795.