REINHARDT, Circuit Judge:
 

 Based almost exclusively on the seizure of over six hundred kilograms of cocaine in the house in which they were temporarily residing, Sylvia Vasquez-Chan [Yasquez] and Julia Gaxiola-Castillo [Gaxiola] were convicted by a jury of conspiracy to possess with the intent to distribute five kilograms or moré of cocaine in violation of 21 U.S.C. § 841, 18 U.S.C. § 2, and 21 U.S.C. § 846. Both defendants were sentenced to the mandatory minimum period of incarceration: ten years, with an additional six years of supervised release. We find that the evidence was legally insufficient upon which to base findings of guilt; accordingly, we reverse the convictions.
 
 [1]
 

 I
 

 The Drug Enforcement Agency’s investigation of the drug ring that Gaxiola and Vasquez were accused of involvement with was no simple operation: there was a massive, planned, and well-organized surveillance of a number of individuals who might be involved in large-scale cocaine trafficking operations in the Tucson area. In late 1990, the Tucson DEA agents identified several persons (none of whom was Gaxiola or Vasquez) who were suspected of participating in. such ■ trafficking. Undercover Agent Moore of the DEA infiltrated the organization and posed as the representative of a group from Phoenix interested in buying a large quantity of cocaine. Agent Moore had a number of meetings with three of the conspirators over a substantial period of time regarding the details of the proposed transactions. In the meantime, other agents conducted large-scale surveillance of the unlawful operations. That surveillance included, among other things, mobile surveillance of the conspirators’ movements and contacts; ground and aerial surveillance of a variety of vehicles used to transport the conspirators and contraband; stationary ongoing surveillance of three residences (as well as a restaurant) utilized in the conspiracy; wiretaps of stationary and mobile phones; and investigations into other individuals believed to be involved in the conspiracy.
 

 In none of Moore’s numerous conversations with the conspirators was either Gaxi-ola’s or Vasquez’s name mentioned, nor were those defendants ever referred to even obliquely. Moreover, the large-scale operation and accompanying surveillance did not suggest that either Gaxiola or Vasquez was involved in the conspiracy in any way. The two defendants did not come to the DEA’s attention until the day on which a hundred-kilogram drug transaction arranged by Moore was scheduled to take place. On that day, DEA surveillance revealed a new residence, at 7151 South Cam-ino Libertad in Tucson, from which cocaine was apparently being removed in preparation for the transaction. Although the DEA spotted two Hispanic males actively transporting cocaine from the house to a van, neither Vasquez nor Gaxiola was seen assisting in the delivery, nor, at that time, were they seen anywhere in or about the residence. After the hundred-kilogram
 
 *549
 
 transaction had been completed and at least one principal in the conspiracy arrested, DEA agents went to the residence at 7151 South Camino Libertad in order to “secure” it. Once there, they looked through an uncovered kitchen window and saw Vasquez working at a kitchen counter. Six armed agents — guns drawn — knocked on the door of the residence and announced “police officers” in Spanish. Vasquez immediately opened the door. She was cooperative and showed no signs of evasiveness. The agents immediately placed her on the floor and ordered Gaxiola, the only other adult occupant of the house, to sit on the living room couch with her infant on her lap. Agents then searched the house and found approximately 600 kilograms of cocaine in a back bedroom.
 

 Vasquez was read her
 
 Miranda
 
 rights and agreed to waive them and speak with the agents. During questioning, she admitted that she had been residing in the house for about three months. She stated that she worked as a caretaker for a man named Gerardo Peralta, was paid between $300 and $800 every fifteen days, and that the money arrived by messenger.
 
 [2]
 
 According to Vasquez, she did not lease or rent the residence, although agents found a utility bill for the house in the names of Gerardo Peralta and Sylvia V. Chan. Gaxiola similarly waived her rights and, during questioning, stated that she had been Vasquez’s roommate in Mexico and had been visiting her and staying at the house for a few weeks. Vasquez also told the officers that the cocaine had been delivered by messengers about three days earlier, although she could not describe them to police.
 

 The cocaine found in the house was in the form of kilogram-sized bricks, most of which were in large round containers. Some of the containers were sealed, some had their lids off. All were of the same opaque, cardboard construction as the type that had been seen being removed from the residence earlier that day. The vast majority of the containers were stored in the small bedroom occupied by Gaxiola and her infant child; there were only two bedrooms in the house, and Vasquez occupied the larger one. Gaxiola at some time had touched several of the 55-gallon drums strewn about the room in which, she slept: twelve of her fingerprints were located on six of the containers, one of those prints being,on the inside surface, of a container cover. None of Vasquez’s fingerprints were found on any canisters, nor were any of Vasquez’s or Gaxiola’s fingerprints found on any of the plastic bags of cocaine. In addition, investigators found neither woman’s prints on other cocaine paraphernalia found in the house. Agents found Vasquez’s purse in the master bedroom in which she slept. It contained a Mexican passport that bore Vasquez’s photograph but a different name.
 

 II
 

 In determining whether the evidence was sufficient to support Vasquez’s and Gaxiola’s convictions, we must determine whether, after viewing all of the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime(s) beyond a reasonable doubt.
 
 See Jackson v. Virginia,
 
 443 U.S. 307, 320, 99 S.Ct. 2781, 2789-90, 61 L.Ed.2d 560 (1979);
 
 United States v. Penagos,
 
 823 F.2d 346, 347 (9th Cir.1987). When there is an innocent explanation for a defendant’s conduct as well as one that suggests that the defendant was engaged in wrongdoing, the government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one.
 
 See United States v. Bishop,
 
 959 F.2d 820, 831 (9th Cir.1992);
 
 Penagos,
 
 823 F.2d at 349.
 

 Both defendants were convicted on two counts: possession of cocaine with intent to
 
 *550
 
 distribute and conspiracy to possess with intent to distribute. The evidence was insufficient to support the conviction of either of the defendants on either count.
 

 A
 

 The jury was properly instructed that Vasquez and Gaxiola could be convicted of possession if they either directly possessed the cocaine in question or if they aided and abetted the possession of cocaine by others.
 
 See
 
 18 U.S.C. § 2;
 
 Nye & Nissen v. United States,
 
 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949).
 

 Direct, Possession
 

 Neither defendant denied knowing that the cocaine was in the house; the crucial question is whether either “possessed” the drugs. In order for either defendant to be guilty of possession, she must have had the power to exercise dominion and control over the narcotics.
 
 See Penagos,
 
 823 F.2d at 350;
 
 United States v. Behanna,
 
 814 F.2d 1318, 1319 (9th Cir. 1987). The defendant’s mere proximity to the drug, her presence on the property where it is located, and her association with the person who controls it are insufficient to support a conviction for possession.
 
 See United States v. Savinovich,
 
 845 F.2d 834 (9th Cir.),
 
 cert. denied,
 
 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988);
 
 United States v. Rodriguez,
 
 761 F.2d 1339, 1341 (9th Cir.1985).
 

 Viewed in the light most favorable to the prosecution, the following evidence tended to support a conclusion that Vasquez had dominion and control over the cocaine in the house: she knew that a large quantity of cocaine was present, she had lived in the house for three months, she was employed as a caretaker for the house, her statements regarding the reasons for her stay at the house were inconsistent, messengers delivered a large amount of cocaine to the back bedroom on one occasion while she was in the residence, she carried a false passport, and her name was among those listed on an electric bill sent to the house. Evidence that tended to support a contrary conclusion included the uncontradicted facts that: other individuals clearly had control over the cocaine, Vasquez’s fingerprints were not located on any of the cocaine containers or mixing ■ paraphernalia, the owners of the cocaine did not refer to her directly or indirectly during any of the discussions or negotiations, she did not come to the attention of the government during the extensive investigation of the narcotics conspiracy involved in this case, she did not lease or rent the premises, she did not attempt to destroy or conceal the evidence or flee from police, she did not carry a firearm nor was one present in the residence, no bills or documents relating to the house were in her name other than the single electric bill, and undisputed testimony indicated that the cocaine had been in the house for only three days prior to her arrest.
 

 Viewed in a similar light, the evidence that Gaxiola possessed the cocaine was the following: she knew that the cocaine was present, she slept in the back bedroom where the cocaine containers were kept, and her fingerprints were found on six of the containers, including one inside of a cover. Evidence that tended to support a contrary conclusion included the uncontra-dicted facts that: other individuals clearly had control over the cocaine, the owners of the cocaine did not refer to Gaxiola during negotiations, she was not identified during the investigation of the conspiracy involved in this case, she did not lease or rent the premises, she did not attempt to destroy or conceal evidence or flee from police, she did not carry a firearm nor was one present on the premises, the cocaine had been in the house for only three days prior to her arrest, no documents relating to the house were in her name, and she arrived at the house only three weeks prior to her arrest, in order to keep Vasquez — her former roommate — company, and the back bedroom was the only available bedroom in which she could sleep.
 

 Several previous cases involving questions regarding the sufficiency of the evidence to support a conviction for possession are instructive. In
 
 United States v. Martinez,
 
 967 F.2d 1343, 1345-46 (9th Cir. 1992), we upheld a conviction in which a
 
 *551
 
 defendant was found in a house in which cocaine was present. In that case, however, the cocaine was found in the defendant’s home, the defendant had a machine gun and another firearm (as well as a pager and a triple beam scale) in the house, there was a large sum of cash in the defendant’s pants pocket, and (most important) the government introduced the transcript of a telephone conversation in which the defendant discussed a possible drug transaction.
 
 Id.
 
 The evidence in
 
 United States v. Castillo,
 
 866 F.2d 1071 (9th Cir.1988), was similarly far stronger than the evidence here. In that case, the defendant was found in a locked bedroom containing the cocaine; a gun and thousands of dollars in cash were under the mattress on which he was resting.
 
 Id.
 
 at 1074-75;
 
 see also id.
 
 at 1088 (“The presence of a gun beneath the mattress directly underneath his body supports an inference that he was prepared to defend his possession of the money and narcotics in the bedroom.”). In the instant case, there is no comparable evidence that Gaxiola and Vasquez possessed the cocaine in question: among other distinctions, unlike in
 
 Martinez
 
 and
 
 Castillo,
 
 here the defendants were not found with either cash or weapons, and there is overwhelming evidence that the narcotics belonged to others.
 

 In cases more analogous to the one here, we have found the evidence legally insufficient to establish possession, .when the evidence suggested that a defendant was merely caught in “extremely incriminating circumstances,”
 
 United States v. Ramirez,
 
 880 F.2d 236, 238 (9th Cir.1989), resulting from his proximity to drugs possessed by other people. In
 
 Ramirez,
 
 the defendant was a cocaine user whom police apprehended emerging from a house in which he lived and in which cocaine, heroin, and materials used in drug distribution were present. In that case, we held that the evidence was insufficient to sustain Ramirez’s conviction because — as here — despite the defendant’s proximity to the narcotics, the evidence suggested that other people actually possessed the drugs in question.
 
 See id.
 
 Similarly, in
 
 Penagos,
 
 we reversed the conspiracy and possession convictions of an individual who repeatedly accompanied narcotics traffickers during their illegal transactions and whom the government contended was the conspirators’ “lookout”.
 
 See Penagos,
 
 823 F.2d at 347-51. Like the defendants in
 
 Ramirez
 
 and
 
 Penagos,
 
 Vasquez’s and Gaxiola’s behavior “was perfectly consistent with that of an innocent person having no stake or interest in drug transactions.”
 
 Id.
 
 at 349. That Gaxiola and Vasquez knew that the cocaine was present in the house is not sufficient. In order to be found guilty of possession, they must have played a more active role, or to put it differently, must in some manner have exercised dominion or control, over the narcotics. A housekeeper or houseguest does not possess drugs owned by others merely because she is fully aware of their existence and location. With respect to Vasquez, that is all that the evidence shows. It is therefore insufficient as a matter of. law to support her conviction.
 
 [3]
 

 The fact that Gaxiola’s fingerprints were located on some of the containers of cocaine does not cause us to reach a different result in her case. The canisters— some opened, some closed, some empty, some filled with cocaine — were located in her bedroom; it is reasonable to assume that she touched them at some time, including on one occasion the inside lid of a cannister, as she passed in and out of the room or made space in the small bedroom so that she and her infant child could have a comfortable place in which to sleep. The evidence presented at Gaxiola’s trial did not establish any reason to believe that an innocent explanation of that evidence was any less likely than the incriminating explanation advanced by the government; accordingly it cannot establish Gaxiola’s guilt beyond a reasonable doubt.
 
 See Bishop,
 
 959 F.2d at 830-31. The presence of her fingerprints on the containers by no means
 
 *552
 
 establishes that she exercised “dominion and control” over the contents; nor would the fact that she touched or moved the lid of an opened canister. Even when the fingerprint evidence is combined with the other evidence against Gaxiola, it is legally insufficient to establish in the mind of a reasonable juror,
 
 beyond a reasonable doubt,
 
 that she possessed the cocaine located in the house in which she was staying. Accordingly, her conviction for possession cannot stand.
 

 Aiding and Abetting
 

 Under 18 U.S.C. § 2, one who aids and abets is as responsible for that act as if he had committed it directly.
 
 See Nye & Nissen v. United States,
 
 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). To be guilty of aiding and abetting another person, it is necessary that the defendant “in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed.”
 
 United States v. Sanchez-Mata,
 
 925 F.2d 1166, 1169 (9th Cir.1991), (quoting
 
 Nye & Nissen,
 
 336 U.S. at 619, 69 S.Ct. at 770). The government must show “not only that the defendant participated in the criminal venture, but that he intentionally assisted in the venture’s illegal purpose.”
 
 United States v. Disla,
 
 805 F.2d 1340, 1352 (9th Cir.1986) (quoting
 
 United States v. Groomer,
 
 596 F.2d 356, 358 (9th Cir.1979)).
 

 With respect to Gaxiola, the evidence is no more supportive of the theory that she assisted the principals than it is of the charge that she possessed the cocaine herself; accordingly, her conviction cannot be upheld on that basis. The government contends that Vasquez could be found guilty of possession on an aiding and abetting theory even if she was not guilty of direct possession because she was the caretaker of the house in which the cocaine was found and an electricity bill for the home was partially in her name. The government claims that her role may have been to live at the house, give it a lived-in appearance, and guard the cocaine. Such a role, if established by probative evidence, would permit a conviction for possession as an aider and abetter. For example, in
 
 United States v. Valles-Valencia,
 
 811 F.2d 1232 (9th Cir.),
 
 amended,
 
 823 F.2d 381 (1987), we upheld a conviction on such a theory when the defendant was found in a residence that contained no furniture, was located on an out of the way, camouflaged plot of land, was clearly being used exclusively as a warehouse for illegal substances, and where the defendant’s fingerprints were found at other narcotics storage locations as well.
 
 See id.,
 
 811 F.2d at 1239-40. Here, however, Vasquez resided with another female friend and her infant child in a home that was actually being used as a residence. Moreover, there was no indication that she had the physical strength or weapons with which to guard the hundreds of kilos of cocaine located in the house.
 

 Vasquez performed the regular household functions of a caretaker, and resided in the home for several months prior to the cocaine delivery, which occurred just three days before she was arrested. She may also have had a personal relationship with one of the co-conspirators. However, there is no evidence that she touched
 
 any
 
 of the drug containers or drug-related materials found in the residence. The fact that a single monthly electricity bill — and no other documentation of any type — was in her name (as well as the name of another individual) still leaves the government’s evidence far short of establishing beyond a reasonable doubt that Vasquez intentionally assisted the illegal purposes of the narcotics traffickers who employed her or sought by her actions to help the narcotics distributors succeed in their illegal venture.
 
 Cf. United States v. Sanchez-Mata,
 
 925 F.2d 1166, 1169 (9th Cir.1991) (holding that a passenger in a car with its trunk full of marijuana could not be convicted of possession on an aiding and abetting theory). In order to be guilty of aiding and abetting, Vasquez must have done more than simply observe the activities in the Camino Libertad house, or serve as a housekeeper or even a girlfriend. Despite the massive surveillance of the conspiracy, Vasquez was never a suspect prior
 
 *553
 
 to the agents’ raid on the house and the conspirators never referred to her in any of their numerous conversations with the principals. Her presence and employment in the house, though ill-advised, is not in itself sufficient evidence of guilt; the evidence regarding Vasquez would not permit a reasonable juror to conclude beyond a reasonable doubt that she aided and abetted the possession of others.
 

 Although they clearly knew that cocaine was present in the house in which they resided, the actions of Gaxiola and Vasquez were consistent with those of individuals who were not participants and did not have a stake in the criminal venture being conducted by the owners of the contraband. The evidence against the two defendants, based in large part on their mere proximity to the drugs in question, provides a legally insufficient basis for a rational jury to conclude beyond a reasonable doubt that they were guilty of possession of a controlled substance. Accordingly, their convictions on that count must be reversed.
 

 B
 

 In addition to possession, Gaxiola and Vasquez were found guilty of conspiracy to possess cocaine with the intent to distribute. In order to find the defendants were members of the conspiracy, the government was required to establish beyond a reasonable doubt that they agreed to accomplish an illegal objective and knowingly committed one or more acts in furtherance of that objective.
 
 See Penagos,
 
 823 F.2d at 348.
 

 The evidence against Gaxiola and Vasquez was legally insufficient to prove the conspiracy charge largely for the same reasons that it was insufficient to prove that either defendant was guilty of possession or of aiding and abetting the conspirators. While the government submitted more than enough evidence that a narcotics conspiracy existed among several individuals
 
 other
 
 than Gaxiola and Vasquez, the evidence does not establish that the defendants here agreed to or knowingly assisted that conspiracy. Gaxiola’s and Vasquez’s actions are consistent with those of an innocent housekeeper and houseguest who have no involvement in the ongoing narcotics transactions; the evidence submitted at trial did not “include sufficient probative facts from which a rational factfinder, applying the reasonable doubt standard, could choose the hypothesis that supports a finding of guilt rather than hypotheses that are consistent with innocence.”
 
 Bishop,
 
 959 F.2d at 830. Accordingly, their convictions on the conspiracy count must be reversed.
 

 The government contends finally that Vasquez’s possession - of a false Mexican passport, when combined with the other evidence against her, is sufficient to establish her involvement in the conspiracy. We disagree. Vasquez was not apprehended using the passport to facilitate the distribution of narcotics, nor was there any evidence that she had used the passport in such a capacity at any time. Innumerable reasons for the carrying of false identification by Mexican or Central American nationals exist, not the ieast of which may be a desire to attempt to protect oneself against deportation. The connection between a fake passport and involvement in a conspiracy to sell large quantities of cocaine is tenuous: there are many Mexican and Central American citizens who reside in the United States illegally; a number of them possess false identifications. The possession’ of a false passport may be unlawful, but it does not by itself suggest participation in a narcotics conspiracy. Nor when added' to the other evidence regarding Vasquez is it sufficient to support her conviction on the conspiracy count.
 

 Ill
 

 Because the evidence was legally insufficient to support Gaxiola and Vasquez’s convictions, we vacate them. Gaxiola — but not Vasquez — contends that we are permitted, in our discretion, to enter a judgment against her on the lesser offense of misprision of a felony. She is incorrect.
 

 There is no Ninth Circuit authority for the proposition that we may direct a
 
 *554
 
 lower court to enter a judgment of conviction on a lesser offense after finding a jury’s verdict insufficient to support its guilty verdict on a greater offense.
 
 [4]
 
 However, other circuits have, under limited circumstances, authorized the entry of a judgment of conviction on a lesser offense after concluding that there was insufficient evidence to support a guilty verdict on the offense of which a defendant was convicted. We agree that the entry of a judgment of conviction on a lesser offense is proper in some instances. Based on an analysis of the decisions of other circuits, we conclude that the conditions necessary to the entry of such a judgment are as follows: (1) the lesser offense must be a lesser-included offense — a “subset” of the greater one; (2) the jury must have been explicitly instructed that it could find the defendant guilty of the lesser-included offense and must have been properly instructed on the elements of that offense
 
 [5]
 
 ; and (3) the government must request on appeal that judgment be entered against the defendant on the lesser offense.
 
 [6]
 

 We need go no further than the first requirement, for it clearly is not met here. Misprision of a felony is not a lesser-included offense of either of the counts of which Gaxiola was convicted. In order to constitute a lesser-included offense, the elements of the lesser crime must form a
 
 *555
 
 subset of those of the charged offense.
 
 See Schmuck v. United States,
 
 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989). Under that test, the lesser offense cannot contain an element not required for the greater offense.
 
 See id.
 
 As applied to the present case, the offense of misprision of a felony, 18 U.S.C. § 4, requires proof of four elements: (1) that the crime of possession with intent to distribute have been committed by someone other than the defendant; (2) that the defendant had actual knowledge of that fact; (3) that the defendant failed to notify authorities of the offense; and (4) that the defendant took an affirmative step to conceal the crime.
 
 See United States v. Ciambrone,
 
 750 F.2d 1416, 1417 (9th Cir.1984). Misprision of a felony therefore contains at least one element — affirmative concealment of a crime — that is not required for the offenses (conspiracy and possession) of which Gaxio-la was convicted. For this reason alone, we cannot enter a judgment of conviction on a count of misprision of a felony in the present case.
 

 CONCLUSION
 

 The evidence against Vasquez and Gaxio-la is insufficient as a matter of law to support their convictions; the convictions are, on all counts
 

 REVERSED.
 

 [1]
 

 . Both defendants also contend that the trial court erroneously failed to suppress evidence obtained as a result of a warrantless search of their residence, and Vasquez additionally claims that a passport in her possession was incorrectly admitted into evidence at trial. Because we find that the evidence was insufficient to sustain their convictions — therefore barring the retrial of both defendants,
 
 see United States v. Bishop,
 
 959 F.2d 820, 828-829 (9th Cir.1992) — we decline to address appellants’ additional claims of error.
 

 [2]
 

 . The government identifies allegedly contradictory or implausible statements made by Vasquez during her questioning. At one point she stated that she was the caretaker of the home and at another that she was the girlfriend of one of the narcotics conspirators. The statements are not necessarily inconsistent — it is possible to be both a caretaker and a girlfriend. However, for purposes of this opinion we will treat the statements in the same manner as the government does.
 

 [3]
 

 . There is, of course, also the fact of her inconsistent statements regarding her role as housekeeper and girlfriend. In our opinion, this inconsistency adds little to the case against her, and certainly not enough to provide a sufficient evidentiary basis for a conviction.
 

 [4]
 

 . Neither Gaxiola nor the government has identified any of our cases that have so held, and we have discovered only one tangentially-related case that provides any support whatsoever for such a claim. In
 
 United States v. Ellsworth,
 
 647 F.2d 957 (9th Cir.1981),
 
 cert. denied,
 
 456 U.S. 944, 102 S.Ct. 2008, 72 L.Ed.2d 465 (1982), a jury found the defendant guilty of assaulting a federal officer with a deadly weapon in violation of 18 U.S.C. § 111. Under that statute, the fact that the assault was with a deadly weapon invoked a penalty enhancement provision and increased the maximum sentence from three to ten years,
 
 See id.,
 
 647 F.2d at 958, n. 1. On appeal, we held that there was insufficient evidence to support the conclusion that the defendant had used a deadly weapon in the assault.
 
 See id.
 
 at 964-65. However, because the evidence was sufficient to support his conviction under 18 U.S.C. § 111 for simple assault
 
 without
 
 the deadly weapon sentencing enhancement provision, we needed only to vacate his
 
 sentence
 
 and uphold his conviction.
 

 Ellsworth
 
 is applicable only when the evidence is sufficient to support the defendant's conviction on the statutory offense upon which the conviction was based. Here, however, the lesser offense that Gaxiola claims that she
 
 could
 
 have been convicted of (misprision of a felony) is not the same offense as that of which she
 
 was
 
 convicted. Where, as here, the evidence is insufficient as a matter of law to support a conviction on the statutory offense upon which judgment was entered, we are required to vacate that judgment and to enter a judgment of acquittal on that’ charge.
 
 See Bishop,
 
 959 F.2d at 828-29;
 
 see also United States v. Soto,
 
 591 F.2d 1091, 1105 n. 9 (5th Cir.1979),
 
 cert. denied,
 
 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1980) ("Where there is, as a matter of law, insufficient evidence to support a conviction, the direction of a judgment of acquittal is the only ‘just’ remedy available for the reviewing court.”) (citing
 
 Burks v. United States,
 
 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978)).
 

 [5]
 

 .
 
 See United States v. Cavanaugh,
 
 948 F.2d 405, 407 (8th Cir.1991) (noting that jury was instructed on lesser included offense);
 
 United States v. Plenty Arrows,
 
 946 F.2d 62, 66 n. 2 (8th Cir. 1991) (entering judgment on lesser-included offense when jury was correctly instructed of elements of lesser offense);
 
 United States v. Dickinson,
 
 706 F.2d 88, 93 (2nd Cir.1983) (entering judgment of conviction on lesser-included offense because "the jury was properly charged by Judge Neaher that it must first conclude that Dickinson was guilty of the lesser predicate offense" before finding guilt, as it did, on the greater offense);
 
 DeMarrias v. United States,
 
 453 F.2d 211, 215 (8th Cir.1972) (entering judgment of conviction for manslaughter because "[t]he jury was instructed on the elements of manslaughter, and implicit in its finding of guilt on the second degree murder charge is a finding of guilt on the manslaughter charge”). If no such lesser-included offense instruction is given, the acquittal (whether at trial or on appeal) on the greater offense precludes a conviction on a lesser offense.
 
 See United States v. Gooday,
 
 714 F.2d 80, 81-83 (9th Cir.1983)
 
 cert. denied,
 
 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 884 (1984);
 
 Forsberg v. United States,
 
 351 F.2d 242, 247-48 (9th Cir.1965),
 
 cert. denied,
 
 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966).
 

 When the defendant does not have a jury trial, the record must show that the judge was expressly advised that the greater offense necessarily included the lesser one.
 
 See United States v. Franklin,
 
 728 F.2d 994, 1000-01 (8th Cir. 1984).
 

 [6]
 

 .
 
 See United States v. Grey Bear,
 
 836 F.2d 1086, 1087-88 & n. 1 (8th Cir.1987) (per curiam),
 
 other issues heard en banc,
 
 863 F.2d 572 (8th Cir.1988) (the government waives a "lesser-included offense” issue on appeal by failing to raise it in the district court or in its opening appellate brief).