2 F.3d 1158
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bethsua CARREON-SMITH, Defendant-Appellant.
 No. 93-50023.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 21, 1993.*
Decided Aug. 5, 1993.
 
 Before: BROWNING, TANG, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Bethsua Carreon-Smith appeals her convictions, following a jury trial, for conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. Secs. 841(a)(1), 846 and 18 U.S.C. Sec. 2. Carreon-Smith contends the evidence was insufficient to support her convictions. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 
 3
 "In determining whether the evidence was sufficient to support ... [Carreon-Smith's] convictions, we must determine whether, after viewing all of the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime(s) beyond a reasonable doubt." See United States v. Vasquez-Chan, 978 F.2d 546, 549 (9th Cir.1992).
 
 
 4
 There is no dispute that the government produced sufficient evidence that a conspiracy existed. "Once the existence of a conspiracy is established, evidence of only a slight connection is necessary to support a conviction of knowing participation in that conspiracy." United States v. Sanchez-Mata, 925 F.2d 1166, 1167 (9th Cir.1991). A conviction for possession with intent to distribute narcotics may be based upon a co-conspirator liability theory. Id. at 1168. "When there is an innocent explanation for a defendant's conduct as well as one that suggests that the defendant was engaged in wrongdoing, the government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one." Vasquez-Chan, 978 F.2d at 549.
 
 
 5
 Here, Border Patrol agents stopped the truck Carreon-Smith and co-defendant Esteban Garcia-Lopez were driving in at an inspection checkpoint near El Centro, California. A search revealed 382 pounds of marijuana in a hidden compartment of the truck. Carreon-Smith told a law enforcement officer that she had met Garcia-Lopez a week before and asked him for a ride to San Diego because she wanted to look for work there.
 
 
 6
 At trial, Garcia-Lopez gave the following testimony: he met Carreon-Smith at a nightclub in San Luis Colorado, Mexico five nights before they were arrested; one-half hour or forty-five minutes after meeting her, Garcia-Lopez met a man named Luis in the nightclub; he told Luis of his difficulty finding work and Luis offered him a job in exchange for driving a truck to Los Angeles; Luis told Garcia-Lopez to pick up the truck in Yuma, Arizona; before picking up the truck, Garcia-Lopez called Carreon-Smith, who lived in Yuma; Garcia-Lopez told her he was going to Los Angeles and offered her a ride to San Diego because she had told him that she wanted to look for work there.
 
 
 7
 Police investigation revealed that the truck was owned by co-defendant Elio Isaac Garcia (Elio), Carreon-Smith's nephew. Thereafter, law enforcement officers searched a house in Yuma owned by co-defendant Dina Lillybeth Garcia (Dina), Carreon-Smith's niece and Elio's sister. In a bedroom closet, officers found a purse belonging to Carreon-Smith and loose pieces of paper that had been torn out of a drug ledger which was hidden in the backyard. In addition, officers found approximately $4,500.00 in cash hidden in a cupboard next to the closet, and a work order in Elio's name and items belonging to Dina in the bedroom.
 
 
 8
 The government contends the evidence was sufficient to establish that Carreon-Smith and others "duped" Garcia-Lopez into transporting marijuana in the truck. The government also contends Carreon-Smith rode with Garcia-Lopez to ensure that he delivered the truck as instructed and because Border Patrol agents were likely to be less suspicious of a couple than of a single man.
 
 
 9
 Carreon-Smith's story explaining her presence in the truck is plausible on its face and consistent with Garcia-Lopez's testimony at trial. Nevertheless, the government produced evidence of a familial relationship among Carreon-Smith, the owner of the truck in which she was riding and in which the marijuana was found, and the owner of the house where drug trafficking activities took place and where Carreon-Smith was a houseguest. See United States v. Calabrese, 825 F.2d 1342, 1347 (9th Cir.1987) (familial relationship, viewed in the context of surrounding circumstances, supported inference of guilt). A reasonable jury could have concluded that Carreon-Smith's relationship with two of the co-defendants, together with her meeting with Garcia-Lopez and request for a ride to San Diego approximately one hour before he was asked to drive a truck containing marijuana, were simply "too great a coincidence." See United States v. Mayes, 524 F.2d 803, 807-08 (9th Cir.1975). Accordingly, we conclude that the evidence was sufficient to support Carreon-Smith's convictions. Compare United States v. Jose Luis L., 978 F.2d 543, 545-46 (9th Cir.1992) (insufficient evidence to support conviction for possession where defendant's story was plausible and consistent with defendant's actions), and Vasquez-Chan, 978 F.2d at 553 (same), with Mayes, 524 F.2d at 807-08 (9th Cir.1975) (sufficient evidence to support conviction for possession where the only innocent explanation of the evidence was so implausible that a reasonable jury could have dismissed it).
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3