**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 04-3508 |
| v. | (D. Kansas) |
| DAVID G. PFLUM, | (D.C. No. 04-CR-40008-SAC) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **McKAY**, and **HARTZ**, Circuit Judges.

Benjamin Franklin famously quipped that "in this world nothing can be said to be certain, except death and taxes." Letter from Benjamin Franklin to Jean-Baptiste Le Roy (Nov. 13, 1789), *in* 10 The Writings of Benjamin Franklin 69 (A. Smyth ed. 1907). While not contesting the inevitability of the former (as far as we know), David G. Pflum believed he had found a loophole to escape the latter. After an extensive study that included reading books such as "The Great Income

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Tax Hoax" and "How Anyone Can Stop Paying Income Taxes," he stopped paying taxes.[1]

But Franklin was more prescient than Mr. Pflum realized. He was indicted on eight counts of failure to pay quarterly employment taxes, in violation of 26 U.S.C. § 7202, and three counts of failure to file a federal income tax return, in violation of 26 U.S.C. § 7203. By his own testimony he conceded that from 1997 to 1999 he failed to file federal income tax returns, and in 1998 and 1999 he failed to withhold federal employment taxes. The jury found him guilty on all 11 counts. Because the trial was held after *Blakely v. Washington*, 524 U.S. 296 (2004), but before *United States v. Booker*, 125 S. Ct. 738 (2005), when the constitutionality of the Federal Sentencing Guidelines was uncertain, the trial judge, recognizing that the amount of tax loss to the government would be a major factor at sentencing, decided to submit the issue to the jury. It found the tax loss to be $573,900.00, resulting in an offense level of 18 and a sentencing range of 27-33 months. Mr. Pflum was sentenced to 30 months in prison. On appeal he asserts that the district court erred in two respects: (1) in refusing to

---

[1] We note that the author of these books, Irwin Schiff, has maintained for more than 30 years that income taxes are voluntary, but, not surprisingly, "he has never been successful with that theory in court." Nov. 13, 1789, *United States v. Schiff*, 379 F.3d 621, 623 (9th Cir. 2004) (citing cases in which Schiff's arguments have been rejected); *Newman v. Schiff*, 778 F.2d 460, 467 (8th Cir. 1985) (referring to the "blatant nonsense" promoted by Schiff).

give the jury a proposed instruction on "willfulness," and (2) in denying a motion

to strike the testimony of two IRS agents. We affirm the conviction and sentence.

## I. WILLFULNESS INSTRUCTION

Mr. Pflum argues that the district court erred in refusing to give a proposed

instruction relating to the "willfulness" of his acts. We review the district court's

refusal to give a requested jury instruction for an abuse of discretion. *United

States v. Starnes*, 109 F.3d 648, 650-51 (10th Cir. 1997). "A district court does

not abuse its discretion so long as the charge as a whole adequately states the

law." *Id*. at 651 (internal quotation marks omitted).

The crimes with which Mr. Pflum was charged required the jury to find

beyond a reasonable doubt that he acted "willfully." 26 U.S.C. §§ 7202, 7203.

The court not only instructed the jury that it must find that Mr. Pflum acted

willfully, but it also gave the following instructions:

INSTRUCTION NO. 18

As mentioned earlier, the third element for the § 7202 offenses
charged in Counts One through Eight of the Second Superseding
Indictment and the third element for the § 7203 offenses charged in
Counts Nine through Eleven of the Second Superseding Indictment
are the same insofar as the government must prove that the defendant
acted willfully.

The defendant acted "willfully" if the law imposed a duty on
him, he knew of the duty, and he voluntarily and intentionally
violated the duty. A defendant's conduct is not "willful" if it
resulted from negligence, inadvertence, accident, mistake or reckless
disregard for the requirements of the law, or resulted from a good

faith misunderstanding that he was not violating a duty that the law imposed on him. If you have a reasonable doubt as to whether the defendant acted willfully, you must acquit the defendant.

R. at 45.

## INSTRUCTION NO. 19

The defendant asserts he did not act willfully as charged in the indictment, because he did not believe that the law imposed a duty on him.

A defendant does not act "willfully" if he believes in good faith that he is acting within the law or that his actions comply with the law, even though the belief turns out to be incorrect or wrong. Having the burden to prove the defendant acted willfully as charged, the government must prove the defendant did not believe in good faith that his actions were lawful. The burden of proving good faith does not rest with the defendant because a defendant does not have an obligation to prove anything in this case. Therefore, if you find that the defendant actually believed what he was doing was in accord with tax laws, then you must conclude that the defendant did not act willfully.

In making this determination about the defendant's good faith, you must keep the following in mind. A defendant's good-faith belief or misunderstanding of the law need not be rational or even reasonable, as long as he actually held the belief in good faith. A defendant's good faith misunderstanding of the law must be distinguished from a defendant who understands the duty imposed on him by law but disagrees with that law or views the law as unconstitutional. There is no defense of good faith belief or misunderstanding when a defendant knows his duty under the tax laws but believes, sincerely or not, that the tax laws are unconstitutional or invalid. A defendant's belief that the tax laws violate his constitutional rights does not constitute a good faith misunderstanding of the requirements of the law. Furthermore, a defendant's disagreement with the government's tax collection system and policies does not constitute a good faith misunderstanding of the law. You shall disregard any asserted good

-4-

faith claims that the tax laws are unconstitutional or invalid or that the tax collection system and policies are wrong.

In determining whether the defendant actually held the belief or misunderstanding in good faith, you must consider all the evidence in the case including the defendant's effort to research and understand the relevant tax laws and other authoritative judicial decisions and materials, the reasonableness of the defendant's beliefs, and all of his actions taken before and after the events in question that bear on the sincerity of the defendant's state beliefs.

*Id*. at 46-47.

## INSTRUCTION NO. 21

In proving that an act is done willfully, the government must show that the defendant knew of his legal duty and violated it, voluntarily and intentionally, and not because of mistake or inadvertence or other innocent reason. The knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. Knowledge may be proved by a person's words, acts or omissions, along with all the other evidence, in deciding whether a person acted knowingly, that is voluntarily and intentionally.

In deciding whether a person has knowledge, you also may consider inferences drawn from proof that a person deliberately closed his eyes to what would otherwise have been obvious to him. If you are convinced beyond a reasonable doubt that a person was aware of the high probability of the existence of a fact and that he deliberately avoided learning the truth, then you may infer knowledge of the existence of this fact, but you may still find that the personal actually believed the fact does not exist. It is entirely up to you as to whether you find a person deliberately closes his eyes to the obvious and as to what inferences should be drawn from such evidence. You may not conclude that a person has knowledge, however, from proof of mistake, negligence, carelessness, or a belief in an inaccurate proposition.

*Id*. at 50-51.

Not satisfied with the instructions, Mr. Pflum proposed additional language: "In this case, the Defendant is not presumed to know the law." *Id*. at 11  The district court decided that the substance of the proposed instruction was adequately expressed in other instructions.  We agree.

To be sure, to establish willfulness the government had to prove beyond a reasonable doubt that Mr. Pflum had knowledge of the law.  *United States v. Ambort*, 405 F.3d 1109, 1114 (10th Cir. 2005).  But the instructions given established the government's burden without the additional language proposed by Mr. Pflum.  The jury was instructed that the government must prove each element of the offense beyond a reasonable doubt, including willfulness.  Instruction 18 defined willfulness:  "The defendant acted 'willfully' if the law imposed a duty on him, *he knew of that duty*, and he voluntarily and intentionally violated the duty."  R. at 45 (emphasis added).  Instruction 21 is even more clear:  "In proving that an act is done willfully, the government must show that the defendant knew of his legal duty and violated it, voluntarily and intentionally, and not because of mistake or inadvertence or other innocent reason."  *Id*. at 50.  The jury was also given a lengthy "good faith" instruction, which stated that an act is not done willfully if the person "believes in good faith that he is acting within the law" and that the defendant's "good-faith belief or misunderstanding of the law need not be

rational or even reasonable . . . ." *Id*. at 46-47. This instruction also reiterated that the burden was on the government to prove that the defendant acted willfully and that the defendant "does not have an obligation to prove anything in this case." *Id*. at 46.

The jury was more than adequately instructed that the government had to prove beyond a reasonable doubt that Mr. Pflum was aware of the duties the law imposed upon him and that he intentionally violated those duties. Accordingly, we cannot say that the district court abused its discretion in refusing to give the proposed instruction.

## II.    MOTION TO STRIKE TESTIMONY

Mr. Pflum's second issue on appeal is whether the district court erred in refusing to strike the testimony of two government witnesses. On cross-examination IRS Special Agent Henry Herron testified that the rate of income tax withholding was 28%, a figure that he said was in the federal Sentencing Guidelines, but could be found in the United States Code as well. Agent Abbe Stewart later testified on cross-examination that wage withholding is governed by IRS publication Circular E. On redirect she testified that the 28% figure could be found in 26 C.F.R. § 31.3402(g)(1). After the government rested, Mr. Pflum moved to strike the testimony. His counsel argued that the regulation cited by Agent Stewart related only to supplemental wages and did not mention a 28%

figure. He also argued that Circular E had no legal effect because it was not published in the regulations. The district court denied the motion, but gave Mr. Pflum leave to raise it again. The motion was renewed at the close of evidence and denied again without comment by the court.

Before addressing Mr. Pflum's argument, we make two observations regarding the procedural context of the issue. First, although Mr. Pflum originally argued that the challenged testimony affected both his conviction and sentence, he now concedes that the testimony affected only his sentence calculation. The jury did not need to find a specific amount of tax loss to convict Mr. Pflum on any of the counts. The amount of tax loss was submitted to the jury solely to prevent any potential sentencing problems that might arise in light of *Blakely*.

Second, Mr. Pflum has not objected to the mandatory application of the Sentencing Guidelines to this case. Had he done so, we would be confronted with nonconstitutional *Booker* error because the sentence was calculated solely on facts found by the jury. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005). But because Mr. Pflum has not raised this issue, we need not address it. *See United States v. Sandia*, 188 F.3d 1215, 1218 n.2 (10th Cir. 1999). For purposes of this case we will treat the guidelines in a pre-*Booker* fashion.

"We review the district court's admission of evidence for an abuse of discretion, not disturbing the court's decision unless we have a definite and firm conviction that the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Richardson v. Mo. Pac. R.R. Co.*, 186 F.3d 1273, 1276 (10th Cir. 1999) (internal quotation marks and brackets omitted). We may affirm on any ground supported by the record. *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

We affirm because Mr. Pflum's objection to the challenged testimony was not timely. *See generally* 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 103.11 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997) ("An objection to the admission of evidence must be 'timely' or else any error in admission may not be asserted on appeal. An objection is 'timely' if it is made as soon as the opponent knows, or should know, that the objection is applicable." (footnotes omitted)). The basis for the objection—that the 28% figure used to calculate the tax loss is not in the United States Code or the regulations—was known to Mr. Pflum, or should have been known, long before the objection was made. Specifically, even before Agent Herron took the stand Mr. Pflum had stipulated to the admission of Government Exhibits 6 and 7, which consisted of spreadsheets showing the names of Mr. Pflum's employees, the wages they were paid, and the amount of taxes that should have been withheld.

The exhibits relied on the 28% figure in calculating the required withholding. The cross-examination of Agent Herron also demonstrates that Mr. Pflum's counsel was aware of the 28% figure before Agent Herron took the stand. Indeed, Mr. Pflum's counsel questioned Agent Herron extensively about the 28% figure, and even suggested that the figure was from the Sentencing Guidelines, and not the Tax Code. At one point Mr. Pflum's counsel asked Agent Herron: "Is it not true that that 28 percent that you are using is not something that's dictated or required by the federal income tax laws, the 28 percent figure comes from another set of laws. Is that correct?" Aplee. Supp. App. at 161.

The cross-examination of Agent Stewart also reveals that Mr. Pflum was aware of the basis for his objection long before the government rested its case. Agent Stewart did not testify on direct examination about the tax loss or the 28% figure. Her testimony was limited to describing a W-4 form and the difference between employees and independent contractors. On cross-examination Mr. Pflum's counsel questioned Agent Stewart about the withholding rate for federal income taxes and how that rate would be calculated. Agent Stewart responded: "You would have to look at the payroll tax tables that the Internal Revenue Service puts out each year . . . ." *Id.* at 194.

> Q. Now, this table, is that circular E?
> A. That would be circular E.

Q.  Okay.  Good enough.  That's what I want.  So you're familiar with the fact that under Section 3402 of—just the section itself says withholding shall be done according to some table, right?
A.  That's one of the ways, yes.
. . . .

Q.  And the typical way to withhold would be you'd look at the regulations and it would say consult circular E, correct?
A.  Give or take, yeah.

Q.  And so you'd have to dig out circular E . . . to determine how much is to be withheld?
A.  That's correct.
. . . .

Q.  And the only way you could determine that would be by looking at circular E?
A.  That's correct.

*Id*. at 194-195.

Under Fed. R. Evid. 103 evidentiary objections generally must be made at the time the evidence is offered.  *See Sorensen v. City of Aurora*, 984 F.2d 349, 355 (10th Cir. 1993); *see also Vallejos v. C.E. Glass Co.*, 583 F.2d 507, 511 (10th Cir. 1978) (motion to exclude raised as part of motion for directed verdict was not timely; "the proper time to object to the admission of evidence . . . was at the time it was offered").  In this case Mr. Pflum did not object until after four additional witnesses had been called and the government had rested its case.  *United States v. Gibbs*, 739 F.2d 838, 849 (3d Cir. 1984) (en banc) (objection untimely when made "*not* when the evidence was offered, but during a motion to strike made *after* the government had rested"); *United States v. Kanovsky*, 618 F.2d 229, 231

-11-

(2d Cir. 1980) ("[T]he record reveals that appellant's objection below was not timely since it was not made until after the witness was excused and the jury dismissed from the courtroom.").  The belated objection deprived the government of the opportunity to cure any potential defects in the testimony.  Because the objection was untimely, it was properly overruled.

We AFFIRM Mr. Pflum's conviction and sentence.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge