**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 19, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GEORGE EDWARD BOYD,

      Defendant-Appellant.

No. 09-6156

(D.C. No. 5:08-CR-00237-C-1)
(W. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **HAWKINS**[**] and **MURPHY**, Circuit Judges.

---

Defendant George Boyd was convicted by a jury of seven counts of signing false personal federal income tax returns, in violation of 26 U.S.C. § 7206(1), and seven counts of making false claims for tax refunds, in violation of 18 U.S.C. § 287. Boyd now appeals his convictions, claiming the district court erred in denying his motion to dismiss the § 287 charges as multiplicitous, and in rejecting several of his proffered jury instructions. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Michael D. Hawkins, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

I

*Factual background*

Defendant Boyd graduated from the United States Air Force Academy in June of 1971, and subsequently spent 22 years of active duty in the Air Force, retiring in September of 1993. In February 1998, Boyd, who at the time was living in Albuquerque, New Mexico, began working as a pilot for Atlas Air, a New York-based commercial freight company. Boyd continued to work as a pilot for Atlas Air until April 2009.

Throughout his career with the Air Force, as well as during the first year following his retirement from the Air Force, Boyd filed federal income tax returns on behalf of himself and his wife. In the summer of 1995, Boyd received a notice from the Internal Revenue Service (IRS) indicating they had recalculated the gross income he had reported on his 1994 tax return and that, as a result, he owed an additional $2,000 in federal income taxes. After attempting unsuccessfully to communicate with the IRS regarding this matter, Boyd ultimately paid the additional taxes.

Shortly thereafter, Boyd spoke with a friend at church, Jim Gillespie, who told him that "most Americans are not made liable for the income tax and therefore it's voluntary." Supp. App. at 561. Gillespie subsequently invited Boyd to join him in attending a meeting of a "constitutional law study group" that was meeting at a law library in Albuquerque. Id. Boyd accepted the invitation, and ultimately attended at least two more meetings of the group in 1995.

By early 1996, Boyd had concluded, based upon his own review of the Internal

Revenue Code (IRC), that any "private income," which he classified as income from sources other than the federal government, was not federally taxable. Id. at 595. Consequently, Boyd filed a federal tax return for 1995 reporting as income only the military retirement pay he received from the federal government. Boyd continued his personal research of the IRC and, by the end of 1996, remained convinced that his "private income" was not federally taxable. Id. Boyd also concluded that, in any event, the payment of individual federal income taxes was voluntary.

Boyd's subsequent conduct was consistent with his views of the IRC. Boyd did not file federal income tax returns for the years 1996 through 2002. Further, when he began his employment with Atlas Air, Boyd submitted a W-4 form declaring himself exempt from federal taxes. Similarly, Boyd submitted to the Defense Finance & Accounting Service (the entity responsible for paying retirement benefits to veterans) W-4 forms either declaring himself exempt from federal income taxes or listing numerous exemptions.

Boyd's failure to file federal income tax returns did not go unnoticed by the IRS. In 1998, the IRS sent Boyd a statutory notice of tax deficiency for the tax year 1996. The IRS subsequently sent Boyd similar notices for the tax years 1997 and 1998. Boyd responded by asserting he was not responsible for federal income taxes for those years. The IRS in turn assessed the tax, penalties and interest for those three tax years and sent Boyd notices of the balances due ($26,190 for 1996, $17,252 for 1997, and $29,763 for 1998). In May 2002, the IRS mailed to Boyd final notices of intent to levy and of the

3

right to a collection due process hearing pursuant to 26 U.S.C. § 6330.

Boyd requested a collection due process hearing and declared his intent to make an audio recording of the proceeding. The IRS Appeals Office scheduled a hearing for January 9, 2003, and informed Boyd of its policy prohibiting any recording. When Boyd arrived for the scheduled hearing, the hearing officer gave him copies of transcripts of his accounts for the relevant tax years, but refused to conduct a face-to-face hearing because of Boyd's insistence upon recording any hearing. An IRS appeals officer subsequently issued a notice of determination sustaining the proposed levy.

Boyd appealed to the Tax Court. The Tax Court entered summary judgment in favor of the IRS and imposed a penalty of $2,500 against Boyd for instituting a proceeding primarily for purposes of delay. Boyd unsuccessfully appealed the Tax Court's ruling, first to federal district court, and then to this court. Boyd v. United States, Nos. 04-2124, 04-9001, 2005 WL 237754, at **1 (10th Cir. Feb. 2, 2005).

On April 15, 2005, little more than two months after this court's decision, Boyd filed with the IRS a tax return for the year 2001. On that return, Boyd reported zero wages and zero federal income tax withheld, and claimed a refund of $5,853. Five days later, on April 20, 2005, Boyd filed with the IRS a tax return for the year 2002. The 2002 return reported zero wages, $6,554 in federal income tax withheld, and claimed a refund of $6,318. On May 5, 2005, Boyd filed with the IRS a tax return for the year 2003, reporting zero wages, $24,640 in federal income tax withheld, and claiming a refund of $22,309. On or about that same date, Boyd filed with the IRS a tax return for the year

4

2004.  The 2004 return listed zero wages, $32,953 in federal income tax withheld, and claimed a refund of $32,819.  On June 8, 2006, Boyd filed with the IRS a tax return for the year 2005.  Line 7 of the 2005 return, indicating wages earned, was blank.  The 2005 return listed $34,012 in federal income tax withheld and requested a refund of $33,349.

On November 28, 2005, two IRS special agents went to Boyd's house and asked to speak with Boyd.  Boyd agreed to speak with the agents in the parking lot of a nearby restaurant.  During the ensuing two-hour meeting, the agents reviewed with Boyd, on a line-by-line basis, his tax returns for 2001, 2002, 2003 and 2004.  When asked about the federal income tax withholdings reported on each return, Boyd explained that he calculated those numbers by adding together the federal income tax withholdings, the Social Security taxes, and the Medicare taxes listed on his annual W-2 forms.  Boyd could not, however, identify any IRC sections that supported his inclusion of Social Security and Medicare withholdings as part of federal income tax withholdings, or as part of his requested refund amounts.  Boyd did state "that he did not have wages based on his interpretation of the Internal Revenue Code and cited two [IRC] sections to support that." Supp. App. at 480.  The two IRS special agents told Boyd that, in the opinion of IRS attorneys, his legal conclusions were wrong.

On July 9, 2007, Boyd filed with the IRS a tax return for the year 2006.  It listed zero wages, a withholding of federal income tax in the amount of $30,894, and requested a refund of $30,934.  On October 17, 2008, Boyd filed with the IRS a tax return for the year 2007.  The wage box on the return was left blank.  The return listed $34,422 of

5

federal income tax withholdings, and requested a refund of $32,145.

In total, Boyd excluded from his tax returns for the years 2001 through 2007 $712,559.68 in total wages, and reported a total of $6,102 in federal income taxes owed to the government. Boyd's claims for refunds for those seven years included $49,498 of Medicare and Social Security withholdings.

*Procedural background*

On September 10, 2008, a federal grand jury indicted Boyd on twelve criminal counts arising out of his filing of tax returns for the years 2001 through 2006. On December 2, 2008, a federal grand jury returned a fourteen-count superseding indictment against Boyd. Counts 1 through 7 of the superseding indictment charged him with violating 26 U.S.C. § 7206(1) by signing false personal federal income tax returns for the years 2001 through 2007. Counts 8 through 14 charged him with violating 18 U.S.C. § 287 by making false claims for tax refunds during each of those same seven years (i.e., requesting refunds of his annual Medicare and Social Security withholdings).

Boyd moved to dismiss Counts 8 through 14 of the superseding indictment, arguing that these eight counts were lesser-included offenses of the charges alleged in Counts 1 through 7 of the superseding indictment and were therefore multiplicitous. The district court denied Boyd's motion.

The case proceeded to trial on April 13, 2009. After two-and-a-half days of testimony, including testimony from Boyd himself, the jury found Boyd guilty of all fourteen charges alleged in the superseding indictment. The district court subsequently

sentenced Boyd to a term of imprisonment of 33 months, to be followed by a 3-year term of supervised release. The district court also ordered Boyd to make restitution in the amount of $113,053.

## II

### *Denial of Boyd's motion to dismiss on multiplicity grounds*

In his first issue on appeal, Boyd challenges the district court's denial of his motion to dismiss Counts 8 through 14 of the superseding indictment. According to Boyd, "counts 8 through 14 of the superseding indictment were plainly lesser-include[d] offenses, and thus multiplicitous, to those charged in counts 1 through 7." Aplt. Br. at 15. We review de novo a district court's ruling on a motion to dismiss an indictment on grounds of multiplicity. United States v. Farr, 591 F.3d 1322, 1324 (10th Cir. 2010) ("We review the district court's denial of a motion to dismiss an indictment on double jeopardy grounds de novo[.]"); United States v. Platter, 514 F.3d 782, 785 (8th Cir. 2008) ("We review de novo the district court's determination that counts in an indictment are multiplicitous.") (italics omitted).

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." United States v. Morehead, 959 F.2d 1489, 1505 (10th Cir. 1992) (alterations, quotations and citations omitted). Because multiplicity "poses the threat of multiple sentences for the same offense," it "raises double jeopardy implications." Id.

The controlling test for multiplicity was outlined by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932):

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Id. at 304. In other words, "if each offense for which the defendant is tried or punished contains a separate element not present in the other, double jeopardy does not bar the . . . prosecution" of both offenses. Farr, 591 F.3d at 1326.

Here, Counts 1 through 7 of the superseding indictment charged Boyd with violating 26 U.S.C. § 7206(1) by filing false tax returns for the tax years 2001 through 2007. Section 7206(1) makes it illegal for any person to "[w]illfully make[] and subscribe[] any return . . . which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . ." According to the allegations supporting Counts 1 through 7 of the superseding indictment, on each of the seven tax returns at issue, Boyd reported zero wages, even though the W-2 forms issued to him by his employer Atlas Air indicated he earned annual wages of between $84,000 and $113,000.

Counts 8 through 14 of the superseding indictment charged Boyd with violating 18 U.S.C. § 287. Section 287 provides that "[w]hoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years . . . ." According to Counts 8 through 14 of the superseding

8

indictment, Boyd filed tax returns for the tax years 2001 through 2007 "that claimed refunds" in amounts "substantially more than any refund due to him . . . ." App. at 14. More specifically, the refund claimed by Boyd in each of those tax years was derived by adding together the federal income tax withholdings, Medicare tax withholdings, and Social Security tax withholdings made by his employer Atlas Air. In other words, Boyd sought a refund of not only all of his federal income tax withholdings, but the Medicare and Social Security withholdings as well.

Turning to the essential elements of each of these two categories of crimes, § 7206(1) requires the government to establish: (1) the defendant made and subscribed a federal tax return; (2) the return contained a written declaration that it was being signed subject to the penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter detailed in the indictment; and (4) in filing the false return, the defendant acted willfully. United States v. Winchell, 129 F.3d 1093, 1095-96 (10th Cir. 1997). Section 287, on the other hand, requires the government to prove "that (1) the defendant[] knowingly made and presented to a department or agency of the United States a false, fraudulent or fictitious claim against the United States; and (2) the defendant acted with knowledge that the claim was false, fraudulent or fictitious." United States v. Abbott Washroom Sys., Inc., 49 F.3d 619, 624 (10th Cir. 1995); see United States v. Okoronkwo, 46 F.3d 426, 430 (5th Cir. 1995) (noting that the elements of a § 287 offense include "(1) that the defendant presented a false or fraudulent claim against the United States; (2) that the claim was presented to an agency of the United

9

States; and (3) that the defendant knew that the claim was false or fraudulent").

Applying the Blockburger test to these elements, it is apparent that the two statutory provisions at issue give rise to two offenses, even in situations where, as here, the offenses arise out of the same transaction(s). More specifically, § 7206(1) requires, in pertinent part, proof that the defendant (1) made and subscribed a federal tax return, and (2) the return contained a written declaration that it was being signed subject to the penalties of perjury. In contrast, § 287 requires proof that the defendant made a false claim against the United States for payment. Although in this case the false claims at issue were contained in Boyd's federal tax returns, § 287 does not require the claims to be in any particular form, nor does it require the claim to include a written declaration that it was being signed subject to the penalties of perjury. In short, the two statutes require proof of different elements. As both the government and the district court have noted, "it is quite possible to file a false tax return without also making a false claim," and vice versa. App. at 22. Moreover, the false statements alleged in Counts 1 through 7, i.e., Boyd's statements as to his federal wages, were different from the false statements alleged in Counts 8 through 14, i.e., Boyd's statements as to the amount of federal income tax withholdings he was entitled to be refunded.

For these reasons, we conclude the district court properly denied Boyd's motion to dismiss Counts 8 through 14 as multiplicitous.

*Theory of defense instructions*

In his second issue on appeal, Boyd contends the district court erred in rejecting

10

two of his proffered theory of defense instructions, requested instructions Nos. 30 and 33.

"We review a district court's decision to give [or deny] a particular instruction for an abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." United States v. Gwathney, 465 F.3d 1133, 1142 (10th Cir. 2006).

At trial, Boyd's theory of defense was that he believed in good faith, based upon his own review of the IRC, that his wages from Atlas Air were not federally taxable. Consistent with that theory of defense, Boyd proffered instructions Nos. 30 and 33. Instruction No. 30 stated as follows:

> If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2001 his wages were not taxable, it shall be your duty to acquit him for count 1 of the indictment.
> If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2002 his wages were not taxable, it shall be your duty to acquit him for count 2 of the indictment.
> If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2003 his wages were not taxable, it shall be your duty to acquit him for count 3 of the indictment.
> If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2004 his wages were not taxable, it shall be your duty to acquit him for count 4 of the indictment.
> If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2005 his wages were not taxable, it shall be your duty to acquit him for count 5 of the indictment.
> If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2006 his wages were not taxable, it shall be your duty to acquit him for

11

count 6 of the indictment.

    If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2007 his wages were not taxable, it shall be your duty to acquit him for count 7 of the indictment.

App. at 27-28.

    Similarly, Boyd's requested instruction No. 33 stated:

    If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2001 his wages were not taxable, it shall be your duty to acquit him for count 8 of the indictment.

    If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2002 his wages were not taxable, it shall be your duty to acquit him for count 9 of the indictment.

    If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2003 his wages were not taxable, it shall be your duty to acquit him for count 10 of the indictment.

    If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2004 his wages were not taxable, it shall be your duty to acquit him for count 11 of the indictment.

    If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2005 his wages were not taxable, it shall be your duty to acquit him for count 12 of the indictment.

    If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2006 his wages were not taxable, it shall be your duty to acquit him for count 13 of the indictment.

    If upon consideration of all the evidence you are left with a reasonable doubt whether the defendant Boyd believed in good faith that for the year 2007 his wages were not taxable, it shall be your duty to acquit him for count 14 of the indictment.

Id. at 29-30.

The district court rejected these two proposed instructions, along with several others, noting as follows:

> And I have reviewed all of these proposed instructions. In large part, they do not comply with binding Tenth Circuit precedent. They either are not approved by the Tenth Circuit, are fairly covered by other instructions, or are not relevant under the facts of this case, so I will not give those proposed instructions.

Supp. App. at 672.

As the district court's ruling suggested, the actual instructions given by the district court to the jury effectively encompassed the concepts contained in proposed instructions 30 and 33. To begin with, the district court, in Instruction No. 5, instructed the jury that "[t]he government ha[d] the burden of proving [Boyd] guilty beyond a reasonable doubt," and that if the government "fail[ed] to do so, [the jury] must find [Boyd] not guilty." App. at 44. With respect to Counts 1 through 7 of the superseding indictment, the district court, in Instruction No. 14, instructed the jury that the government had to prove that Boyd knew the statements in the returns at issue indicating he earned zero wages were "false," id. at 56, and it explained that "[a] statement is 'false' if it is known to be untrue or is made with reckless indifference as to its truth or falsity," id. at 57. The district court also instructed the jury regarding Counts 1 through 7 that it had to find that Boyd "acted willfully," id. at 56, and it explained that if the jury "ha[d] a reasonable doubt as to whether [Boyd] acted in good faith, sincerely believing himself to be exempt by the law from reporting his wages accurately, then [he] did not intentionally violate a known legal duty — that is, [he] did not act willfully," id. at 58-59.

13

Similarly, with respect to Counts 8 through 14 of the superseding indictment, the district court instructed the jury that the government had to prove that Boyd "knowingly made and caused to be presented to the [IRS] a false or fraudulent claim against the United States," and that he "knew that the claim was false or fraudulent." Id. at 63. In defining for the jury the words "knowing" and "knowingly," the district court explained that if the jury "ha[d] a reasonable doubt as to whether [Boyd] acted in good faith, sincerely believing that he was entitled to the tax refund claims at issue in Counts Eight through Fourteen, then the element of knowledge would not be established." Id. at 66.

Because the instructions given by the district court to the jury accurately stated the law and encompassed the concepts contained in Boyd's proposed instructions Nos. 30 and 33, we conclude the district court did not abuse its discretion in refusing to give those proposed instructions.

*The "innocent explanation" instruction*

In his third issue on appeal, Boyd contends the district court erred in rejecting his proffered instruction No. 5. That instruction, entitled "INNOCENT EXPLANATION," stated as follows:

> When there is an innocent explanation for a defendant's conduct as well as one which suggests that the defendant was engaged in wrong doing [sic], the Government must produce evidence which would allow you, the jury, to conclude beyond a reasonable doubt that the Government's version of the defendant's conduct is the correct one.

Supp. App. at 25.

Boyd apparently based this proffered instruction on several older Ninth Circuit

14

cases, most notably United States v. Vasquez-Chan, 978 F.2d 546, 549 (9th Cir. 1992),

overruled on other grounds by United States v. Nevils, 598 F.3d 1158, 1166 (9th Cir.

2010).  In Vasquez-Chan, the two codefendant-appellants challenged the sufficiency of

the evidence supporting their convictions.  In addressing these challenges, the Ninth

Circuit stated that "[w]hen there is an innocent explanation for a defendant's conduct as

well as one that suggests that the defendant was engaged in wrongdoing, the government

must produce evidence that would allow a rational jury to conclude beyond a reasonable

doubt that the latter explanation is the correct one."  Id. at 549.

　　Importantly, however, the Ninth Circuit has since held that an instruction tracking

this quoted language from Vasquez-Chan is unnecessary if, under the other instructions,

the jury could not have convicted the defendant if they believed an innocent explanation

existed for his conduct.  United States v. Govan, 152 F.3d 1088, 1093 (9th Cir. 1998);

United States v. Melvin, 91 F.3d 1218, 1224 (9th Cir. 1996).  As we have already

discussed, the jury in this case could not have, under the instructions actually given by the

district court, convicted Boyd of the charged crimes unless the government proved

beyond a reasonable doubt that he acted willfully and knowingly in submitting the false

tax returns and in making false claims for refunds to the government.[1]  Thus, we conclude

the district court did not abuse its discretion in rejecting Boyd's proposed "innocent

---

[1] Although Boyd complains that our pattern criminal jury instruction defining reasonable doubt fails to provide jurors with "concrete examples of what is reasonable doubt," Aplt. Br. at 35, his only remedial suggestion is that the district court should have given his proposed Instruction No. 5.  That proposed instruction, however, adds little, if anything, to the reasonable doubt instruction actually given by the district court.

15

explanation" instruction.

*Instruction regarding Boyd's knowledge of the law*

In his fourth and final issue on appeal, Boyd contends the district court erred in

rejecting his proffered instruction No. 25, which read as follows:

> In this case, the defendant is not presumed to know the law. For any law
> the government asserts the defendant knew, the government must prove
> beyond a reasonable doubt that the defendant knew it.

Supp. App. at 26.

It is true that, in order to establish willfulness, the government had to prove beyond

a reasonable doubt that Boyd had knowledge of the law. More specifically, "the standard

for willfulness 'require[d] the Government to prove that the law imposed a duty on the

defendant, that the defendant knew of this duty, and that he voluntarily and intentionally

violated that duty.'" United States v. Ambort, 405 F.3d 1109, 1114 (10th Cir. 2005)

(quoting Cheek v. United States, 498 U.S. 192, 201 (1991)). But the instructions actually

given by the district court adequately outlined this governmental burden, thus making the

additional language proposed by Boyd unnecessary.

To begin with, Instruction No 15 defined for the jury the concept of willfulness:

> If you find beyond a reasonable doubt that the acts constituting the
> crimes charged in Counts One through Seven were committed by the
> defendant *voluntarily as an intentional violation of a known legal duty* —
> that is, with specific intent to do something the law forbids or with bad
> purpose either to disobey or disregard the law — then the element of
> willfulness as defined in these instructions has been satisfied even though
> the defendant may have believed that the conduct was politically or morally
> required, or that ultimate good would result from such conduct.

16

On the other hand, *if you have a reasonable doubt as to whether the defendant acted in good faith, sincerely believing himself to be exempt by the law from reporting his wages accurately, then the defendant did not intentionally violate a known legal duty* — that is, the defendant did not act willfully — and that essential part of the offense would not be established.

Supp. App. at 58-59 (emphasis added).

Further, Instruction No. 16 defined the meaning of "good faith," and explained, in

pertinent part:

A defendant does not act willfully if he believes in good faith that he is acting within the law or that his actions comply with the law. A good faith belief is one which is honestly and genuinely held, even if wrong. Therefore, if the defendant actually believed that what he was doing was in accord with the tax statutes, he cannot be said to have the criminal intent to subscribe to a false income tax return. A belief need not be objectively reasonable to be held in good faith. Nevertheless, you may consider whether the defendant's stated belief about the tax statutes was reasonable as a factor in deciding whether the belief was honestly or genuinely held.

* * *

The defendant has not established his good faith if the government has proved beyond a reasonable doubt that he knowingly used false representations or pretenses with intent to deceive in connection with the conduct described in Counts One through Seven.

Id. at 60.[2]

Thus, in sum, because the instructions actually given by the district court

adequately informed the jury that the government had to prove beyond a reasonable doubt

that Boyd was aware of the duties the law imposed upon him and that he intentionally

---

[2] We emphasize that the language of Instruction No. 16 is not contained in our Criminal Pattern Jury Instructions, nor have we ever required the giving of such language in a tax evasion or false claims case.

violated those duties, the district court did not abuse its discretion in refusing to give Boyd's proffered instruction No. 25.  See United States v. Pflum, No. 04-3508, 2005 WL 2476245, at **3 (10th Cir. Oct. 7, 2005) (rejecting a similar instruction proffered by the same defense counsel).

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge